```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
TROY JENNINGS,                                              REPORT AND
                        Plaintiff,                          RECOMMENDATION
              - against -
FEDERAL BUREAU OF PRISONS, et al.,                          11-CV-1973 (JBW) (JO)
                        Defendants.                         11-CV-2181 (JBW) (JO)
-----------------------------------------------------------X
```

**JAMES ORENSTEIN, Magistrate Judge:**

In April 2011, federal prisoner Troy Jennings ("Jennings") filed two separate *Bivens* actions against various federal entities and employees. *Jennings v. FBI*, 11-CV-2181 (JBW) ("*Jennings I*"), Docket Entry ("DE") 1; *Jennings v. FBI*, 11-CV-1973 (JBW) ("*Jennings II*"), DE 1; *see Bivens v. Six Unknown Named Agents of the Federal Bureau of Prisons*, 403 U.S. 388 (1971). In each case, Jennings sought and was granted leave to proceed *in forma pauperis*. *Jennings I*, DE 5; *Jennings II*, DE 12. The defendants in both cases then moved to revoke this status on the basis of the "three strikes" provision of the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915(g), which prohibits federal prisoners from proceeding *in forma pauperis* when they have, on three or more prior occasions, "brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted." *Jennings I*, DE 17; *Jennings II*, DE 17. Jennings has not submitted any opposition to the motion, but has instead simply inquired as to the amount of the filing fee and offered to pay it. *Jennings I*, DE 28. The Honorable Jack B. Weinstein, United States District Judge, has referred both motions to me. *Jennings I*, DE 31; *Jennings II*, DE 21. I now make this report and, for the reasons set forth below, respectfully recommend that the court address the motions on the merits on the ground that they are not moot, and further respectfully recommend that the court grant the motion in each case.

I.  Background

Jennings has been in federal custody since June 10, 2001, and continues to serve a term of imprisonment for convictions on weapons and robbery charges. *See United States v. Maria Mercedes Angelo, et al.*, docket no. 02-CR-0743 (JGM), DE 3; *id.*, DE 69. As discussed to some extent below, Jennings has in the years since his conviction sought various forms of relief related to his criminal prosecution, most recently in the two instant actions. Specifically, in *Jennings I*, he now asserts constitutional claims against the Federal Bureau of Prisons ("BOP"), the United States Probation Office for the Eastern District of New York ("Probation"), the United States Attorney's Office for the Eastern District of New York (the "USAO"), and the Clerk's Office for the United States District Court for the Eastern District of New York (the "Clerk's Office") (collectively, the "Agencies"). *Jennings I*, DE 1. In *Jennings II*, he asserts separate claims under the Privacy Act, 5 U.S.C. § 552a *et seq.*, against the Agencies as well as several individual Probation Officers and the Warden of a federal prison. *Jennings II*, DE 1.

When he initially filed each of the instant complaints, Jennings sought leave to litigate *in forma pauperis* pursuant to the PLRA. *Jennings I*, DE 2; *Jennings II*, DE 4. The court granted each motion and ordered the defendants in each case to answer. *Jennings I*, DE 12; *Jennings II*, DE 7. As a result of the court's orders, Jennings had no obligation to serve process on the defendants; the United States Marshals Service ("Marshals Service") did so instead, at least with respect to most defendants. *See* 28 U.S.C. § 1915(d) (requiring officers of the court to issue and serve process for *in forma pauperis* litigants); *Jennings I*, DE 29, 30, & 33; *Jennings II*, DE 14-16 & 23-25.[1] The Agencies then filed the instant motions, which are identical in all respects, asking the court to

---

[1] The Clerk issued summonses as to each named defendant in each case. *Jennings I*, DE 13; *Jennings II*, DE 6. The record does not reveal why the Marshals Service has served some of the named defendants but not others in each case.

revoke Jennings' status as an *in forma pauperis* litigant. *Jennings I*, DE 12; *Jennings II*, DE 7. In a Memorandum and Order dated September 30, 2011, Judge Weinstein referred the motions to me for a report and recommendation. *Jennings I*, DE 32; *Jennings II*, DE 22.[2]

In an order dated October 3, 2011, I directed Jennings to file his written opposition to the defendants' motions by October 19, 2011. Jennings never did so. Instead, on the cover page of a document dated October 12, 2011 – a copy of a typed, multiple-page document apparently intended to serve as a request for an order to show cause that Jennings had previously filed, *see Jennings II*, DE 8 – Jennings inserted the following hand-written message:

> James Orenstein, Magistrate Judge can you please in form me what is the fee of the forma pauperis that was revoke so I can remove the money from my personal account and pay it in full so this motion can be answered in accordance with the merits and not dismissed[.]
>
> This is a copy of the original motion in which an answer was to be filed no later than September 19, 2011 … Judge Weinstein never stated what the forma pauperis was for or how much what ever the cost is for this case to be he[a]rd on the merits[.] Let me know and my fa[mi]ly and friend will provide the [filing] fee[.]

*Jennings II*, DE 28 at 1.

Although Jennings filed the latter document only in *Jennings II*, I infer that he intended to convey a message common to both pending cases: namely, that he is willing and able to pay the filing fee, and has therefore declined to oppose the Agencies' motions on the merits. As explained below, however, that position does not moot the motions.

---

[2] When he referred the motions, Judge Weinstein reiterated his "strong recommendation to the government … that it consider waiving its claims to $34,000 in restitution" to the United States Postal Service, as the "lack of any substantial probability that any appreciable restitution will be possible, and the inhibiting impact on rehabilitation … of the overhanging financial obligation, make [such] waiver … desirable and equitable." *Id*. at 2, 3. Although the restitution order has prompted extensive collateral litigation, which burdens the government as well as the court, the government appears to have ignored Judge Weinstein's recommendation.

II.   Discussion

   A.   Mootness

Jennings' apparent willingness to pay the filing fee does not moot the Agencies' motions. If Jennings continues in the status of an *in forma pauperis* litigant even after paying the filing fees, he will continue to be entitled to certain benefits that non-indigent defendants do not enjoy. Specifically, he will be entitled to have the Marshals Service serve process on the named defendants who have not yet been served. *See* 28 U.S.C. § 1915(d). In addition, he will be entitled to have the court order the United States to pay certain expenses on his behalf, such as the cost of printing the record on appeal if required by the appellate court, as well as that of preparing a transcript of any proceedings before me if required by the district court. *See id* § 1915(c). Accordingly, Jennings' willingness (and presumed ability) to pay a total of $700 in filing fees does not obviate the need for this court to address the merits of the Agencies' motions.

   B.   The "Three Strikes" Provision

An indigent prisoner is normally allowed to file a lawsuit without paying the usual filing fees. *See* 28 U.S.C. § 1915(b). Congress has decided as a matter of policy, however, that such subsidized access to the courts should be denied to those who abuse it, and has therefore provided that prisoners who have repeatedly brought legal claims dismissed as frivolous, malicious, or not stating a claim must, like the vast majority of plaintiffs, pay the filing fee at the outset of the litigation. Specifically, the PLRA provides as follows:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted[.]

28 U.S.C. § 1915(g).

The case law of this circuit characterizes a litigant's *in forma pauperis* status as a "congressionally created benefit" rather than a right. *Polanco v. Hopkins*, 510 F.3d 152, 156 (2d Cir. 2007) (quoting *Rodriguez v. Cook*, 169 F.3d 1176, 1180 (9th Cir. 1999)). As a result, even where a court learns of an indigent prisoner's "three strikes" – that is, the three prior dismissals that disqualify a prisoner for *in forma pauperis* status under the statute – only after granting *in forma pauperis* status, it may revoke the status and dismiss the complaint. *Id.* at 155; *Harris v. City of New York*, 607 F.3d 18, 23 (2d Cir. 2010). The Agencies seek this relief on the ground that Jennings has accumulated three such "strikes" in prior cases. I consider each proffered strike below.[3]

    1.    The Louisiana Action

On August 13, 2008, Jennings filed a *Bivens* action, *in forma pauperis*, against several defendants – BOP, Probation, the U.S. Department of Justice, the USAO, the Clerk's Office, and several individuals – in the United States District Court for the Western District of Louisiana (the "Louisiana Action"). *See Jennings v. Federal Bureau of Prisons*, 2009 WL 195875, at *1 (W.D. La. Jan. 8, 2009) (magistrate judge's report and recommendation). Jennings alleged that BOP and the other defendants had erred in calculating his security custody classification. *Id.* On January 23, 2009, the court dismissed Jennings' claims against the individual defendants for lack of venue and also dismissed the remaining claims against the federal agencies with prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(B), for failure to state a claim upon which relief may be granted. *See Jennings*

---

[3] An indigent prisoner who runs afoul of the "three strikes" provision may nevertheless be granted *in forma pauperis* status if he is "under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). Jennings has never asserted that he qualifies for this exception, and nothing in the record suggests that he does.

*v. Federal Bureau of Prisons*, 354 Fed. App'x 60, 61 (5th Cir 2009) (per curiam) (describing the district court's actions). Jennings appealed the latter decision, and the appellate court affirmed after *de novo* review. *Id*. The Agencies contend that the district court's decision in this case qualifies as a strike for purposes of the PLRA. *Jennings I*, DE 17-1 (Agencies' memorandum of law) ("Memo."), DE 17-1 at 5-7. They make no such assertion with respect to the circuit court's affirmance on appeal.

The PLRA does not count as a strike an action dismissed for improper venue. *See* 28 U.S.C. § 1915(g). Because the district court dismissed some of the claims in the Louisiana Action for lack of venue, an obvious threshold question is whether the statute's reference to an "action" refers exclusively to an entire lawsuit, or may also encompass individual claims within the case. The Agencies appear to simply assume the latter interpretation, and, to be sure, at least one circuit court has adopted their tacit position. *See Pointer v. Wilkinson*, 502 F.3d 369, 376 (6th Cir. 2007) (holding that an action dismissed in part on § 1915(g) grounds and in part for failure to exhaust qualifies as a strike, "at least insofar as the new suit does not simply re-file previously non-exhausted claims").

However, the Agencies' unstated assumption is at odds with the majority view, as reflected in the decisions of several other circuit courts. *See Tolbert v. Stevenson*, 635 F.3d 646, 651 (4th Cir. 2011) ("§ 1915(g) requires that a prisoner's entire 'action or appeal' be dismissed on enumerated grounds in order to count as a strike."); *accord Thompson v. Drug Enforcement Admin.*, 492 F.3d 428, 432 (D.C. Cir. 2007); *Turley v. Gaetz*, 625 F.3d 1005, 1008-09 (7th Cir. 2010); *Powells v. Minnehaha Cnty. Sheriff Dep't*, 198 F.3d 711, 713 (8th Cir. 1999).

The United States Court of Appeals for the Second Circuit has yet to provide authoritative guidance on the question. *See Larocco v. Jackson*, 2010 WL 5067825, at *3 n.3 (E.D.N.Y. Oct. 21, 2010). However, that court has recently endorsed the general interpretation underlying the majority rule, reading Section 1915 as "refer[ring] to a prisoner bringing 'a civil action,' rather than individual claims," and noting that "[n]othing in the text of § 1915 provides any justification for dividing an action into individual claims." *Chavis v. Chappius*, 618 F.3d 162, 171 (2d Cir. 2010) (holding that where a prisoner with three strikes adequately alleges imminent danger as to at least one claim, he may proceed *in forma pauperis* on his other claims within the same action as well, even where the remaining claims lack a nexus to any imminent danger); *see also Tafari v. Hues*, 539 F. Supp. 2d 694, 702 (S.D.N.Y. 2008) (concluding, after an exhaustive consideration of the relevant case law, that the majority view is more consistent with Second Circuit precedent).

If the Agencies' unstated view of the law is correct, then the district court decision in Jennings' Louisiana case counts as a strike for purposes of Section 1915(g). If it is not, as *Chavis* suggests and the majority of circuit courts have held, then the fact that some of Jennings' claims in that case were dismissed on venue grounds means that the district court's decision was not a strike. Even assuming that the matter remains unresolved in this circuit after *Chavis*, I conclude that the approach endorsed in that case and in the majority of other circuits represents the best reading of the PLRA. As a result, I reject the Agencies' assertion that the district court's dismissal of the Louisiana Action was a strike for purposes of the PLRA.

The latter conclusion, however, does not end the analysis of the impact of the Louisiana Action on this case. The case law in this circuit (as in every other circuit to consider the matter) recognizes that an appeal resolved against a prisoner on one of the grounds enumerated in Section

7

1915(g) counts as a strike in its own right, even if the underlying district court decision is also counted as a strike. *Chavis*, 618 F.3d at 165 (holding that "an incarcerated plaintiff incurs two strikes when a complaint and subsequent appeal are independently dismissed for grounds listed in § 1915(g)"); *see also id.* at 167 (collecting cases). As the court in *Chavis* explained after quoting the relevant provision of the PLRA:

> "Under this language, bringing an action and filing an appeal are separate acts. One could be frivolous, the other not. Having been told that his complaint is frivolous, a prisoner must decide whether to appeal. Prisoners who learn from their mistakes will suffer one strike, at most, in a case. Obstinate or malicious litigants who refuse to take no for an answer incur two strikes. That approach not only comports with statutory language but also fortifies the deterrence of frivolous activities in litigation."

*Id.* at 168 (quoting *Newlin v. Helman*, 123 F.3d 429, 433 (7th Cir. 1997), *overruled on other grounds by Walker v. O'Brien*, 216 F.3d 626 (7th Cir. 2000) *and Lee v. Clinton*, 209 F.3d 1025 (7th Cir. 2000)); *see also Shepherd v. Goord*, --- F.3d ----, 2011 WL 5528587, at *3 (2d Cir. Nov. 15, 2011) (endorsing the *Chavis* court's "most natural reading" of the PLRA); *Adepegba v. Hammons*, 103 F.3d 383, 388 (5th Cir. 1996).

The rule of *Chavis* plainly applies to Jennings' appeal of the Louisiana Action: unlike the district court's decision, which relied in part on a lack of venue, the issue on appeal was solely whether Jennings had stated a claim on which relief could be granted; he did not seek appellate review of the dismissal of some claims on venue grounds. 354 Fed. App'x at 61. On *de novo* review, the appellate court held that Jennings had failed to state a *Bivens* claim, and therefore affirmed the dismissal of such claims. Jennings thus indisputably made the independent decision to force the further expenditure of judicial resources by appealing the portion of the court's dismissal based on his failure to state a claim, an enumerated ground under § 1915(g). I therefore conclude that Jennings acquired one strike as a result of the Louisiana Action.

2. The DC Action

The Agencies assert that Jennings incurred his second strike in a case filed in the United States District Court for the District of Columbia (the "DC Action"). In this case, Jennings brought claims under the Privacy Act and 42 U.S.C. § 1983 against BOP, Probation, the USAO, the Clerk's Office, this court, and the United States Department of Justice. At the same time that he filed the complaint, Jennings sought leave to proceed *in forma pauperis*. The district court immediately reviewed his submissions pursuant to 28 U.S.C. § 1915A(b)(1) and dismissed all of the Section 1983 claims, as well as his Privacy Act claims against Probation and the Clerk's Office, on the ground that they failed to state a claim upon which relief could be granted. *See Jennings v. Federal Bureau of Prisons*, 2008 WL 3983115 (D.D.C. Aug. 28, 2008). The court then granted Jennings leave to proceed *in forma pauperis* on his remaining causes of action under the Privacy Act, *id.*, but later granted the defendants' motion to dismiss those as well for failure to state a claim. *See Jennings v. Federal Bureau of Prisons*, 657 F. Supp. 2d 65, 73 (D.D.C. 2009).[4] As a result, the entire DC Action was dismissed because Jennings failed to state any viable legal claim – and Jennings therefore incurred his second strike for purposes of the PLRA.

3. The Pennsylvania Action

The Agencies cite as Jennings' third strike a civil rights action that he filed *in forma pauperis* on February 26, 2009, in the United States District Court for the Middle District of Pennsylvania (the "Pennsylvania Action"). Declaration of Bonni J. Perlin ("Perlin Decl."), Ex. G,

---

[4] There is no pending appeal of either decision by the district court in the DC Action. The record reveals that Jennings filed a notice of appeal in that case, but that it was later dismissed for failure to prosecute. Perlin Decl., Ex. C, *Jennings I*, DE 17-2; *Jennings II*, DE 17-2. The district court's decision is therefore the final judgment in the case.

*Jennings I*, DE 17-2; *Jennings II*, DE 17-2. In that action, Jennings sued various prison employees at the Allenwood United States Penitentiary for having allegedly lost or destroyed his incoming and outgoing inmate mail. *Id.* On October 30, 2009, the court dismissed these claims as frivolous, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i). *Id.* Jennings has not appealed the decision, and his time to do so has expired. *See* Fed. R. App. Pro. 4(a)(1) (setting deadline for appeal at 30 days). The Agencies are thus correct that the Pennsylvania Action was Jennings' third strike for purposes of the PLRA.

III.   Recommendation

For the reasons set forth above, I respectfully recommend that the court grant the motions to revoke Jennings' leave to proceed *in forma pauperis*. I further recommend that Jennings be given 30 days to pay the $350 filing fee in each case; should he fail to do so, I further recommend that the court dismiss both actions without prejudice to renewal upon payment of the filing fee. *See Nelson v. Chang*, 2009 WL 367576, at *3 (E.D.N.Y. Feb. 10, 2009).

IV.   Objections

I direct the movants' counsel to serve a copy of this Report and Recommendation on plaintiff Jennings by certified mail, and to file proof of service no later than November 22, 2011. Any objections to this Report and Recommendation must be filed on the electronic docket no later than December 6, 2011. Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order. *See* 28 U.S.C.

§ 636(b)(1); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

SO ORDERED.

Dated: Brooklyn, New York
November 17, 2011

                                                /s/
                                      JAMES ORENSTEIN
                                      U.S. Magistrate Judge